IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KEVIN J. FREEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:14-CV-199 |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Kevin J. Freeman ("Freeman") challenges the decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Specifically, Freeman alleges that the Administrative Law Judge ("ALJ") erred by failing to assign controlling weight to his treating psychiatrist's opinion, improperly disregarding the only medical evidence addressing his residual functional capacity ("RFC"), and providing the vocational expert with a hypothetical that did not address all of his functional limitations. I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **RECOMMEND DENYING** Freeman's Motion for Summary Judgment (Dkt. No. 15), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 19.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Freeman failed to demonstrate that he was disabled under

1

the Act.[1]  See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted).  The final decision of the Commissioner will be affirmed where substantial evidence supports the decision.  See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Freeman protectively filed for SSI in January 2011, claiming that his disability began on February 14, 2002.  R. 166.  Freeman later amended his onset date to January 18, 2011.  R. 38-39, 188.  The Commissioner denied the application at the initial and reconsideration levels of administrative review.  R. 147-57.  On October 23, 2012, ALJ Benjamin R. McMillion held a hearing to consider Freeman's disability claim.  R. 33-68.  Freeman was represented by an attorney at the hearing, which included testimony from vocational expert Olan Dodd.  Id.

On November 2, 2012, the ALJ entered his decision analyzing Freeman's claim under the familiar five-step process,[2] and denying Freeman's claim for disability. R. 16-32.  The ALJ

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work.  Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience.  See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work.  Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983).  The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability.  The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

found that Freeman suffered from the severe impairments of bipolar disorder and history of polysubstance abuse. R. 21. The ALJ further found that Freeman retained the RFC to perform a full range of work at all exertional levels, except that he could only perform work with one to two step job instructions and no more than occasional interaction with the general public. R. 22.

The ALJ determined that Freeman is capable of working at jobs that exist in significant numbers in the national economy, such as box truck washer, lumber sorter, and laundry worker. R. 27. Thus, the ALJ concluded that Freeman was not disabled. R. 28. On February 25, 2014, the Appeals Council denied Freeman's request for review (R. 1-7), and this appeal followed.

## ANALYSIS

This case focuses on Freeman's mental health impairments and the extent to which they affect his functional abilities. The ALJ did not give controlling weight to the treating psychiatrist's opinion, which Freeman contends disregards the only medical evidence relating to the RFC and led to the ALJ's improper reliance on state agency psychological consultants' opinions who did not assess his functional limitations. Freeman argues that these decisions caused the ALJ to give an incomplete hypothetical to the vocational expert. The court finds that all of Freeman's arguments lack merit and that substantial evidence supports the ALJ's decision.

### Treating Physician

Freeman asserts that the ALJ erred by giving little weight to the opinion of his treating psychiatrist J. Bobby Miglani, M.D., who submitted a letter explaining Freeman's diagnoses and also completed a medical source statement. R. 384-85. The October 2, 2012 letter from Dr. Miglani states that Freeman suffers from severe mood and anxiety disorder that will not significantly improve in the short term. R. 384. The October 22, 2012 checkbox-based medical source statement notes that Freeman cannot make judgments commensurate with the functions of

3

unskilled work, cannot manage changes in work setting, and cannot respond appropriately to supervisors, coworkers, and work situations. R. 385. Dr. Miglani further checked that Freeman's symptoms cause him to be off-task as much as twenty percent of the workday and cause absences more than once per month. Id. Dr. Miglani also wrote that Freeman's symptoms and limitations will continue regardless of his polysubstance abuse. Id. The ALJ assigned Dr. Miglani's opinion "little weight" because his opinion was inconsistent with his own clinical findings and unsupported by the medical evidence of record as a whole. R. 23-26.

A treating physician's opinion is not automatically entitled to controlling weight. The social security regulations require that an ALJ give the opinion of a treating source controlling weight, if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. See id.; Saul v. Astrue, Civ. Action No. 2:09-cv-1008, 2011 WL 1229781 (S.D.W. Va. March 28, 2011). Further, if the ALJ determines that a treating physician's opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10

4

(E.D. Va. Dec. 29, 2010). Here, the ALJ considered all of the relevant factors, and his decision to afford less weight to the opinion of Dr. Miglani is supported by the record.[3]

Substantial evidence supports the ALJ's assertion that Dr. Miglani's opinion is inconsistent with his own clinical findings and those of his assisting colleagues at New River Valley Community Services ("NRVCS"). Freeman enrolled in the Program for Assertive Community Treatment ("PACT") at NRVCS in January 2006 and continued receiving treatment through at least 2012. The treatment notes from May 2006 through July 2008 provide minimal information, except to note Freeman's prescriptions, occasional noncompliance with treatment, and lack of concerning symptoms or signs of decompensation. R. 249, 251, 255, & 351. Dr. Miglani's treatment notes were slightly more thorough in early 2009. During the January 2009 appointment, Dr. Miglani documented Freeman's reluctance to take medications and continued substance abuse; in an otherwise unremarkable record, Dr. Miglani mentioned self-reports of occasional mood swings and elaborated that "[o]ver the past several years he has had a history of substance abuse and mood disorder and the treatment team has wondered about whether mood disorder is primary or secondary to substance abuse. Unfortunately that has never been quite clarified." R. 256. In March 2009, Dr. Miglani wrote about Freeman's increasing substance abuse and that there was "no clear evidence of depression but he does have history of mood swings." R. 306. The records only reflect a missed home visit and changes in medication from May through July 2009, although Dr. Miglani noted Freeman did not suffer from "any

---

[3] The regulations require the ALJ to consider all of the factors under 20 C.F.R. § 404.1527(c) when evaluating the physicians' opinions; however, the ALJ is "not required to make a seriatim assessment as if it were a sequential evaluation." Vaughn v. Astrue, No. 4:11-cv-29, 2012 WL 1267996, at *5 (W.D. Va. Apr. 13, 2012). Here, the ALJ considered all of Freeman's treatment records in detail, specifically reviewed Dr. Miglani's psychiatric treatment records, and found that his opinion was not supported by medical evidence and was inconsistent with the record as a whole. Thus, the ALJ followed the requirements of the regulations.

5

major psychosocial problems" in May 2009. R. 250, 349. Freeman stopped treatment at NRVCS beginning in June 2009 to serve a term of imprisonment. R. 316.

Following his incarceration, Freeman met with Dr. Miglani in January 2011 and resumed taking medication. R. 254. Despite Freeman's lack of treatment in prison, Dr. Miglani noted no "major break throughs [sic]… [which] indicate[s] that he thankfully has no severe degree of psychosis or mania." R. 260. Freeman renewed his participation in PACT in February 2011, where he continued to present with symptoms of mania, sleep disturbance, agitation, and marijuana use. R. 369. Freeman's Service Plan noted he "has no benefits at this time and is [in] need of support to regain his disability. He has difficulty managing his daily schedule and often is difficult to find and engage in treatment." R. 369. Rather than meeting with Dr. Miglani, Freeman regularly met with Sarah Strang, RN of NRVCS from May 2011 through at least May 2012. Following her home visits in May and July 2011, Ms. Strang noted mild anxiety, mild psychotic symptoms, and a depressed mood, along with Freeman's request for an increase in medication due to mood swings, sleep deprivation, days of depression, and auditory hallucinations. R. 354-55, 357-58.

During a treatment reassessment in July 2011, Freeman was diagnosed with bipolar disorder with psychotic features and polysubstance dependence; without explanation, the checkbox-based assessment noted Freeman cannot consistently perform practical daily living tasks, persistently failed to perform daily living tasks without significant assistance, cannot maintain consistent employment at a self-sustaining level, and cannot maintain a safe living situation. R. 372-73. During his January 2012 reassessment, Freeman reported a recent altercation and that Child Protective Services removed his infant daughter from his home "due to the infant's safety being in danger." R. 378. The assessment also noted that Freeman would

6

need payee services if he were to receive benefits, and maintained the same determinations relating to his inability to perform daily activities as determined in July 2011. R. 378-79. Freeman's stated goal in his related Service Plan was "to chill so I can continue to live in my trailer and not be evicted." R. 381.

From September 2011 through January 2012, Freeman reported anxiety, insomnia, and auditory hallucinations to Ms. Strang. R. 395-99, 404. Losing custody of his daughter appears to have caused the spike in anxiety. R. 397. Freeman's symptoms took a turn for the worse in January 2012, where he met with Dr. Miglani and displayed "a full spectrum of symptoms" following his girlfriend's overdose. R. 402. From February through May 2012, Ms. Strang noted waxing and waning anxiety, irritability, and hallucinations; other than a report of a drunk in public charge in February and a verbal altercation with Ms. Strang in May, Freeman's treatment records generally are unremarkable and show improvements after an increase in medication. R. 406-16. Dr. Miglani met with Freeman in September 2012, and Freeman reported mood dysregulation and paranoia. R. 417. Later in September, Freeman reported that the court permanently removed his infant daughter for adoption and that he experienced auditory and visual hallucinations, mood swings, and lack of sleep. R. 419. Dr. Miglani noted drug seeking behavior. R. 419.

Substantial evidence supports that Freeman's treatment records from NRVCS do not align with the severe opinions adopted by Dr. Miglani. Although Freeman undeniably has a troubled past, his treatment records do not show more intense symptoms of bipolar disorder or more severe treatment such as hospitalizations. The minimal documented mental status

7

examinations revealed logical and coherent thought content.[4] Ms. Strang's treatment notes, which make up the large majority of the NRVCS medical records, describe Freeman as cooperative with relatively mild symptoms. Other than the checked boxes in NRVCS treatment assessments' noting Freeman cannot perform daily tasks or maintain consistent employment, the records discuss relatively mild anxiety and mood swings, occasional hallucinations that do not appear to interfere with daily activities, and no hospitalizations or similarly extreme treatment. The ALJ thoroughly reviewed Freeman's regular treatment at NRVCS with both Dr. Miglani and Ms. Strang beginning with his first appointment following incarceration in January 2011. R. 23-25. Although Dr. Miglani's and Ms. Strang's treatment records document Freeman's subjective complaints of irritability, insomnia, anxiety, depression, and hallucinations, the records do not translate those complaints into clinical evidence or functional limitations. See Webb v. Astrue, 2012 WL 3061565, at *17 (N.D.W. Va. June 21, 2012) (citing Craig v. Chater, 76 F.3d 585, 590 n.2 (4th Cir. 1996)). Dr. Miglani's and Ms. Strang's treatment records simply do not include the severe symptoms one would expect based on Dr. Miglani's opinion.

Dr. Miglani's opinions lacked the detail necessary for an ALJ to determine functional limitations. Dr. Miglani's letter only lists Freeman's diagnoses and does not discuss any limitations that the ALJ could have included in Freeman's RFC. A diagnosis of a mental impairment alone is insufficient to establish disability. See Cameron v. Astrue, No. 7:10–cv–58, 2011 WL 2945817, at *8 (W.D. Va. July 21, 2011) (citing Gross v. Heckler, 785 F.2d 1163, 1165–66 (4th Cir. 1986); 42 U.S.C. § 423(d)(2)(A)). As for the medical source statement, Dr. Miglani submitted a checkbox form; the Fourth Circuit has recognized checkbox forms have limited probative value. See Leonard v. Astrue, No. 2:11cv00048, 2012 WL 4404508, at *4

---

[4] Although Freeman notes his May 5, 2011 mental status examination as demonstrating severe mental limitations despite normal mental status examinations (Dkt. No. 16, p. 7), the majority of Freeman's medical records do not show severe symptoms of bipolar disorder or other psychiatric disease.

8

(W.D. Va. Sept. 25, 2012) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Such check-the-box assessments without explanatory comments are not entitled to great weight, even when completed by a treating physician."). Other than reciting Freeman's diagnoses, the form also does not state any findings to support Dr. Miglani's conclusions.

Substantial evidence also supports the ALJ's determination that the remainder of the administrative record did not support Dr. Miglani's conclusions. The record reflecting Freeman's treatment for bipolar disorder began in January 2004 with his hospitalization at Southwestern Virginia Mental Health Institute, where he voluntarily admitted himself due to depression and suicidal thoughts. R. 252-53. Following treatment and receipt of medication over seven days, Freeman was diagnosed with adjustment disorder with depressed mood, rule out bipolar disorder (Type II), and polysubstance dependence; he left treatment with improved anxiety and no evidence of delusions, hallucinations, or thoughts of self-harm. R. 252-53. Beyond this hospitalization and the NRVCS treatment notes, the record only includes PACT case management notes from 2008 through 2011, self-reported statements, and opinions of state agency psychological consultants.

The PACT case management notes generally do not discuss changes in Freeman's mental health. R. 262-354. Freeman's case manager Lee Wrenn, BS, QMPHP noted some waxing and waning of symptoms; Freeman appeared agitated during his incarceration in late 2008 (R. 274), fluctuated between an improved mood and increased agitation throughout 2008 and 2009 (R. 279, 281-87, 291, 314-15, 318-19, 321), and showed a lack of psychiatric symptoms of bipolar disorder and only occasional anxiety in 2011. R. 323-44.[5] In his disability reports, Freeman reports that he needs reminders to take his medication (R. 203, 224), suffers from decreased

---

[5] Exhibits 10 E, 11E, and 12E were removed from Freeman's administrative record by the Appeals Council because they referred to another patient. R. 237-39.

9

sleep and reduced activity levels (R. 203-05), and sometimes is "hard to get along with." R. 204-05. Freeman complained of mood swings and depression, and discussed how his bipolar disorder makes it difficult to talk, concentrate, and get along with others. R. 206, 214. However, Freeman also notes that he cares for his personal needs, prepares meals weekly, spends time with friends, and plays with and teaches his kids on the weekends. R. 203, 221-23. Freeman says he has not been fired due to problems with getting along with others. R. 228. The state agency psychological consultants reviewing the record in 2011 did not consider Freeman's mental health impairments to be severe. R. 72, 80.

The case management notes, hospitalization from years prior, and self-reports do not suggest that Freeman suffers from a disabling mental health impairment. Freeman undoubtedly faces challenges in his life from his bipolar disorder and assorted mental health problems, but he appears able to engage in sufficient daily activities to sustain employment. Overall, the NRVCS treatment notes and remaining medical record do not support Dr. Miglani's medical source statement. The ALJ carefully considered all of the evidence in the record, as is evident from his nearly five page recitation of the treatment records, Freeman's testimony, and the opinion evidence. The ALJ gave detailed reasons for his decision to give little weight to Dr. Miglani's opinion. Substantial evidence supports his decision to give little weight to Dr. Miglani's opinion.

### State Agency Psychological Consultants

Freeman contends that the ALJ incorrectly reviewed the state agency psychological consultants' opinions, which were limited to psychiatric review technique results, and did not have a medical opinion to rely on in forming his RFC. Freeman asserts that the psychological consultants' opinions should not have received "some weight" and that substantial evidence

10

cannot support an RFC developed without a medical opinion supporting the RFC. I find that substantial evidence supports the ALJ's review of the consultants' opinions and his RFC.

The state agency psychological consultants classified Freeman's mental health impairments as nonsevere. On April 4, 2011, Andrew Bockner, M.D. reviewed Freeman's medical records and assessed that he had nonsevere affect disorder and alcohol/substance abuse addiction disorders. R. 72. Dr. Bockner gave the opinion that Freeman faced mild difficulties in maintaining social functioning and concentration, persistence, or pace and that he would experience one or two episodes of decompensation for extended duration. R. 72-73. Dr. Bockner could not determine any restriction on activities of daily living due to insufficient evidence. R. 72. On August 31, 2011, Julie Jennings, Ph.D. reconsidered Dr. Bockner's opinion and reviewed Freeman's medical records.[6] R. 80-81. Dr. Jennings arrived at the same conclusions as Dr. Bockner, with the exception that she found Freeman had no restriction for activities of daily living. R. 81. The ALJ gave their opinions "some weight." R. 25-26.

Evidence from a non-examining source, such as a state agency physician or medical consultant, is considered opinion evidence and must be given weight according to the amount of relevant evidence the medical source presents to support the opinion. 20 C.F.R. §§ 404.1527(e), 416.927(e). Although the ALJ is not bound by a state agency medical consultant's findings, state agency medical consultants are highly qualified physicians who are experts in Social Security disability evaluation. See Social Security Ruling ("SSR") 96–6p. When the ALJ does not give a treating physician's opinion controlling weight, he must explain the weight given to the opinions of the other medical experts–including state agency physicians. See Durham v. Astrue, No. 7:10-CV-00545, 2011 WL 6148941, at *2 (W.D. Va. Dec. 8, 2011) (citing 20 C.F.R. §

---

[6] Although the reviewing physicians did not have all of the records to review or Dr. Miglani's opinions, Dr. Jennings did have some medical records from NRVCS. R. 71, 78.

11

404.1527(f)(2)(ii); 20 C.F.R. § 416.927(f)(2)(ii)). By regulation, the ALJ was required to consider and give weight to the state agency psychological consultants' opinions. Although the consultants determined that Freeman did not have a severe impairment, they did provide opinions relating to the materiality of Freeman's substance abuse, and his restrictions of daily living and difficulties in maintaining social functioning and concentration, persistence, or pace. Freeman's contention that the ALJ should not have reviewed and weighed the state agency consultants' opinions is without merit.

Freeman further argues that the ALJ's RFC is not supported by substantial evidence because no accepted opinion in the record supports the RFC. The ALJ does not need a specific medical opinion to support the RFC. See Jackson v. Comm'r, Soc. Sec., No. CIV. CCB-13-2086, 2014 WL 1669105, at *2 (D. Md. Apr. 24, 2014) (quoting 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)) ("However, an ALJ need not parrot a single medical opinion, or even assign 'great weight' to any opinions, in determining an RFC assessment. Instead, an ALJ is required to consider 'all of the relevant medical and other evidence.'"); Green v. Comm'r of Soc. Sec. Admin., No. CIV.A. 8:09-02313, 2010 WL 4782138, at *3 (D.S.C. Nov. 16, 2010) (dismissing claimant's argument that substantial evidence did not support an ALJ's RFC because the treating physician's opinion did not receive controlling weight and the record did not include any other opinion evidence). The ALJ has the authority to craft the RFC finding based on his own review of the record. See 20 C.F.R. §§ 404.1527(d)(2), .1546(c), 416.927(d)(2), .946(c) (explaining that it is the ALJ alone who has the responsibility for deciding a claimant's RFC). As the fact-finder, it was within the ALJ's province to evaluate the record and weigh the relative worth of the evidence, including opinion evidence, as a necessary part of making his disability decision. See 20 C.F.R. §§ 404.1520b, .1527(c), .1545(a)(3), 416.920b, .927(c), .945(a)(3). As long as the

12

ALJ's finding is supported by substantial evidence, it should be upheld. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ("We must sustain the ALJ's decision, even if we disagree with it, provided the determination is supported by substantial evidence and thus, would be enough to justify a refusal to direct a verdict in a jury trial.").

Substantial evidence supports the ALJ's RFC. The ALJ correctly gave little weight to the treating psychiatrist and gave some weight to the state agency consultants. Although the ALJ did not accept a medical opinion recommending functional limitations, the ALJ had hundreds of pages of psychological records to review in finding such limitations. The administrative record did not detail severe symptoms or treatment. The record is riddled with information about Freeman's substance abuse problems, but provides a far muddier assessment of limitations stemming from his other mental health impairments. Freeman's treatment for bipolar disorder is limited to medication, semi-regular appointments with his psychiatrist, and regular appointments with a case manager. Claimants disabled with bipolar disorder typically have worse symptoms– even as they wax and wane–and more severe treatment. Despite the lack of supporting record, the ALJ still allowed for the limitations of one-to-two step job instructions and only occasional interaction with the public. Freeman essentially asks the court to reweigh the evidence, which is not within the power of the reviewing court. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence ultimately supports the ALJ's RFC assessment.

### Vocational Expert Hypothetical

Freeman alleges that the ALJ improperly excluded Dr. Miglani's recommended mental limitations in the hypothetical presented to the vocational expert. Dkt. No. 16, p. 5-6. Freeman claims that the vocational expert was not given the opportunity to consider whether an individual with Dr. Miglani's limitations could perform the jobs identified. Id. at 12. At the administrative

13

hearing, the ALJ asked the vocational expert to determine the number of jobs available for an individual with Freeman's vocational background and his ultimately determined RFC. R. 62-64. The vocational expert testified that such an individual could work as a laundry worker, box truck washer, or lumber sorter. R. 63.

The purpose of a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). A vocational expert's opinion must be given in response to proper hypothetical questions, which fairly set out all of the claimant's impairments. Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (quoting Walker, 889 F.2d at 50). The ALJ has "some discretion to craft hypothetical questions to communicate to the vocational expert what the claimant can and cannot do." Fisher v. Barnhart, 181 F. App'x 359, 364 (4th Cir. 2006). Hypothetical questions should adequately reflect the plaintiff's RFC as found by the ALJ and supported by sufficient evidence. Id. Without a finding of a functional limitation, the ALJ is not required to add such a limitation to the RFC. See, e.g., Thompson v. Astrue, 442 F. App'x 804, 806 (4th Cir. 2011); Mills v. Astrue, No. CA 2:10-1657-CMC, 2011 WL 3840989, at *2 (D.S.C. Aug. 26, 2011).

Substantial evidence supports the ALJ's RFC determination for Freeman's mental limitations. The ALJ gave little weight to Dr. Miglani's opinion and therefore was not obligated to include his recommended limitations in the question to the vocational expert or in his RFC. Based on his assessment of the record evidence, the ALJ properly included the mental limitations of performing one-to-two step job instructions and only occasional interaction with the public in his hypothetical. R. 63. The ALJ's hypothetical question to the vocational expert fully and

14

fairly incorporated all of the limitations set forth in the ALJ's denial decision.  See Walker, 889 F.2d at 50.  Substantial evidence supports the ALJ's hypothetical to the vocational expert.

## CONCLUSION

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. The ALJ properly considered all of the objective and subjective evidence in adjudicating Freeman's claim for benefits and in determining that his mental impairments would not significantly limit his ability to do basic work activities. Accordingly, I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Freeman's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Glen E. Conrad, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter:  August 5, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

15

Case 7:14-cv-00199-GEC-RSB   Document 25   Filed 08/06/15   Page 15 of 15   Pageid#: 540